MATTHEW, Plaintiff-Appellee, v. NEW YORK CENTRAL RAILROAD COMPANY, Defendant-Appellant.

Ohio Appeals, Tenth District, Franklin County.

No. 6304.   Decided August 5, 1960.

34

*Mr. Paul M. Herbert* and *Mr. Paul L. Thompson*, for plaintiff-appellee.

*Messrs. Wilson & Rector* and *Mr. Harrison Smith, Jr.*, for defendant-appellant.

(McLAUGHLIN, J., of the Fifth Appellate District, sitting by designation in the Tenth District.)

BRYANT, P. J.   This is an appeal on questions of law from a verdict and judgment in an action for damages for personal injury tried in the Court of Common Pleas of Franklin County, Ohio.   Cecil L. Matthew, plaintiff-appellee, a railroad brakeman, brought suit under the Federal Safety Appliance Act and the Federal Employers' Liability Act against the New York Central Railroad Company, defendant-appellant, herein called Central, alleging that part of the braking mechanism on a railroad car namely, a brake rod, was defective and broke while

he was attempting to set the brakes, causing Matthew to fall and suffer serious and permanent injuries to his head and neck.

The jury which tried the case returned a verdict of $75,000 in favor of Matthew and against Central. The trial court in considering a motion for a new trial ordered a remittitur of $30,000 and, if not accepted by plaintiff, ordered a new trial. The remittitur was accepted, the motion for a new trial was overruled, and judgment for $45,000 was entered against Central from which this appeal has been filed.

The answer filed by Central contained two defenses—the first, a general denial, and the second, the affirmative defense of fraud, the latter for the reason that Central claimed that Matthew at the time of being hired, failed to disclose his previous employment by the Pennsylvania Railroad Company and that he had been injured several times while working for the latter. The trial court took the second defense from the jury because the evidence disclosed that Central had learned of the previous employment and injuries and continued to keep Matthew on the pay roll. Matthew in his reply, denied the alleged fraud.

It was the petition of Central that Matthew was a malingerer, had in fact never sustained any injuries in a fall, that his claims and testimony were fabrications. They introduced evidence of other injuries and caused him to be examined by a psychiatrist. The trial consumed most of five days and the issues were hotly contested throughout and there were sharp exchanges between counsel. The record consisted of approximately 500 pages. Plaintiff offered 23 exhibits and defendant 12.

The allegations of the amended petition, in brief include that Central is a corporate common carrier by rail, that Matthew and Central were engaged in interstate commerce by rail and their respective rights, duties and liabilities were controlled by the Federal Employers' Liability Act and the Safety Appliance Act, that Central owned and maintained a railroad and owned and maintained in Franklin County, Ohio, near the Union Depot in Columbus, what are known as East Yards.

The amended petition then alleges:

"On or about September 9, 1955, defendant was switching

cars in East Yards and plaintiff was employed as a brakeman of defendant's crew which was engaged in switching cars on said tracks. Plaintiff, in the performance of his duties as a brakeman, was required to and did mount the first car in that cut of cars being switched for the purpose of securing the brakes. Plaintiff was standing on the platform of the car at the east end and commenced to set the hand brake located there in order to render the car immobile. As plaintiff applied force to the brake, the rod broke and plaintiff was thrown from the top of the car approximately 14 feet to the ground and was injured as hereinafter set forth.

"Defendant hauled or permitted to be hauled on its line a railroad car with an inefficient, defective and unsafe hand brake in violation of the Safety Appliance Act.

"As a proximate result of said violation of the Safety Appliance Act, plaintiff sustained severe blows to his head, neck and shoulders causing loss of consciousness, and sustained a laceration, bruising, spraining and tearing of the skin, muscles, nerves and ligaments in his head, neck and shoulders and particularly severe damage to his brain and nervous system. As a result of said injuries, plaintiff has suffered severe pain in his neck, shoulders and arms, severe and continuous headaches, dizziness, vomiting, black-out spells, confusion and disorientation with occasional losses of consciousness and bouts of amnesia, and the free use, strength and motion of his neck and shoulders has been substantially affected and impaired.

"Prior to the accident, plaintiff was an able-bodied man earning approximately $420.00 per month as a brakeman and conductor and the rate of pay for such work has since increased. Since said accident and as a result of said injuries, plaintiff has been unable to do any railroad work with the exception of the period between the date of the accident and July 16, 1956, during which time plaintiff worked intermittently. Since July 16, 1956, plaintiff has been able to do light work only and his loss of wages as a result of the accident has been approximately Twelve Thousand and No/100 Dollars ($12,000.00).

"Plaintiff further says that he has incurred medical expenses as a result of the accident in the amount of approximately Two Thousand and No/100 Dollars ($2,000.00).

"Plaintiff says that he is reasonably certain his injuries are permanent and that he will be forced to suffer extreme pain and distress, incur medical expenses, lose work and wages, and suffer loss of earning capacity in the future."

In this court, nine typewritten pages are filled with the 32 errors assigned, Central's briefs include 133 pages while appellee's brief is 51 pages in length. The first assignment of error occupies an entire typewritten page and many of the errors assigned are duplications in whole or in part of other assigned errors. For this reason, it will be necessary to condense the statement of the errors and to group together those which are related or duplicated.

It seems quite clear in the record that Matthew's regular tour of duty as a brakeman employed by Central in its yards in Columbus was what is known as the third trick, starting at 11:30 P. M. and concluding at 7:30 A. M. the next day. It also appeared that at times, he served as a conductor. The fact that Matthew's time of employment began on one day and concluded on the next appears to have been the source of much confusion. It was Matthew's contention that the accident in which he was injured happened one hour and fifteen minutes after he started to work, or at 12:45 A. M.

It is in connection with the circumstances surrounding the accident as alleged in the amended petition and testified to by witnesses for Matthew that give rise to sharp differences as to three particulars as follows: (a) the date; (b) the number on the car from which Matthew fell, and (c) whether the car was alone or part of a cut of four or five cars when the accident happened.

We have grouped together six of the errors assigned which have to do with the date of the accident, the number of the car from which Matthew fell and whether the car was alone or part of a cut of four or five cars. These assigned errors are as follows:

Error No. 1. Central contends that in the petition and plaintiff's evidence it was the claim of plaintiff that (1) the accident occurred on September 9, 1955, (2) that Matthew fell from a boxcar No. VGN 30,403, and (3) the accident occurred as a cut of cars including No. VGN 30,403 was being switched.

Central further claims that in the closing argument of counsel for Matthew, the earlier claim was abandoned and a new claim put forward as follows: (1) date of the accident was September 10, 1955, (2) that Matthew fell from a boxcar other than No. VGN 30,403, and (3) that at the time of the accident the car from which Matthew fell was being switched alone.

The petition does not say the accident occurred on September 9, 1955, but says on or about September 9, 1955, and no where makes reference to any car by number. Plaintiff introduced a New York Central System Telegraphic Report of Personal Injury signed at the bottom by G. J. Wotisky, Conductor, who was Matthew's superior. This report fixes the time of the accident at 12:45 A. M., September 9, 1955, states that a brake rod broke throwing Matthew off the car striking the back of his head and neck, followed by a reference to car No. VGN 30,403. Matthew explained this by stating that reports were dated as of the date when the third trick began. The source and circumstances under which the car number was placed on Wotisky's report were in sharp controversy. In the interrogation of Matthew, the questions as to date, the car number and other circumstances were thoroughly explored and the jury would have been warranted in finding that the claimed fall took place at 12:45 A. M. on September 10, 1955, if they placed any credibility in Matthew's testimony.

Central's position was that Matthew did not suffer a fall and was not injured and his claim was without foundation in fact. It is obvious the jury rejected this theory and it is difficult to see the materiality of this objection. We have studied the closing argument of counsel for plaintiff and are unable to find where there was any notable change in theory. This assignment of error must therefore be overruled.

Closely connected is error No. 3 in which Central claims to have been surprised by the alleged change in theory in the final argument. As we have indicated, we are unable to find any such change and therefore this assignment of error must be overruled.

Error No. 6 claims a variance between the petition and the evidence. Of course, under the provisions of Section 2317.49, Revised Code, no variance is material unless it "has

actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits.'' The section also requires proof to the satisfaction of the court which was not done in this case, as a result of which we feel this assignment of error is not well taken and must be overruled.

Error No. 24 is the overruling of a defense motion seeking to limit the closing argument to ''an incident involving car No. VGN 30,403,'' and not permitting reference to be made to any other car. As heretofore pointed out the source of this car number was very much in dispute. No reference was made to any car number in the petition. Plaintiff contended he fell from a boxcar and defense Exhibit No. 12 being ''The Official Railway Equipment Register'' clearly showed that car No. VGN 30,403 was a gondola and not a boxcar. Plaintiff had a right to introduce the telegraph report of personal injury (Plaintiff's Exhibit A), which was drawn from the files of Central and called in question a part of it as was done here. We agree with the ruling of the court below and this assignment of error must be overruled. Quite similar are errors Nos. 28 and 29, the former complaining of the refusal of the court to charge the jury that it could consider only incidents having to do with car No. VGN 30,403, and the latter that the court should have included in its general charge to the jury an instruction that the only violation of the Safety Appliance Act they could consider was one alleged in the amended petition and proved by plaintiff's evidence. As to error No. 28, there was no reason, either in law or logic, for such a ruling and the instruction asked for in error No. 29 would have confused rather than helped the jury. For the reasons above set forth, errors Nos. 28 and 29 should be and are hereby overruled.

Also in this connection we note two errors alleged to have been committed by the court. Error No. 9 complains of statements made by the court in connection with the interrogation of Chester W. Garman, District Claim Agent for Central, called for cross-examination, the particular language appearing in the record, page 153. Matthew's counsel had inquired whether Garman had any records showing the date on which it was claimed Matthew was injured in September 1955. Defense counsel objected and the court inquired (Line 4) whether it made

any difference whether it was the ninth or tenth, to which defense counsel replied that Matthew had testified it was "the night of the ninth and the morning of the tenth." We note that no objection was interposed by the defense to the court's remarks, thus depriving the court of any opportunity to correct this alleged error. This assignment of error is not well taken and must be overruled.

Objection was also made to the giving of plaintiff's special instruction No. 1, this being error No. 23. The only objection interposed is that the instruction contained the words, "the hand brake" and "the car." In as much as these are correctly used and clearly conveyed the idea, we are unable to ascertain the basis for this claimed .error and this error must therefore be overruled.

Seven of the errors assigned are specifically charges of misconduct of counsel. Error No. 2 was "asking a question of Dr. Fusco as to whether plaintiff had epilepsy" (R. 206), said not to be a part of plaintiff's claim. This entire transaction was part of the interrogation relative to the injuries alleged to have been sustained in plaintiff's fall from a railroad car. The following appears in lines five through ten, R. 206:

"Q. Now, these periods of unconsciousness, are they similar to epileptic seizures?

"MR. SMITH: Objection.

"THE COURT: Yes, I will sustain that.

"MR. SMITH: I ask the jury be instructed, Your Honor.

"THE COURT: Yes, disregard that."

We note that Dr. Fusco was not asked whether plaintiff had epilepsy but whether the periods of unconsciousness were similar to epileptic seizures. It is clear from what has been set forth above that no answer was given to the question that the court sustained the objection and directed the jury to disregard the question. It is difficult to conceive how any prejudice resulted and this assignment of error must be overruled.

Error No. 7 charges plaintiff's counsel with misconduct because of a statement to the effect that the company had possession of Matthew's bloody shirt. (R. 139.) In this connection it should be borne in mind that Matthew had testified (R. 97, lines 22-25) that the railroad company took "my time book

and everything was in the locker." At page 138, line 25, "the locker was opened and everything gone." He also testified (R. 43, line 16) that "the back of my head and my neck and my shoulder was skinned, and I had blood on the back of my jacket and shirt." It is with this background that counsel for plaintiff asked counsel for Central for the stubs which Matthew claimed he had left in his locker and beginning at line 8, page 139 of the record, the following took place:

"MR. SMITH: We don't have them. What do you think we did, rob his locker?

"MR. HERBERT: Yes, the company has his bloody shirt, too, not you.

"THE COURT: The jury disregard that. There will be no dispute, the railroad company has a record of the payments and there can be no dispute about it."

It will be observed that the statement as to whether the locker had been robbed immediately preceded the rejoinder complained of. It is unfortunate that tempers flare but the court acted promptly by instructing the jury to disregard the remark and pointed out the source from which the desired information was available. We believe error No. 7 must be overruled.

We shall consider together errors Nos. 10, 11, 15 and 20. The first two (Nos. 10 and 11) are based upon the overruling by the court of defense objections to question wholly or partly hypothetical in nature. (R. 179-180.) Dr. Secrest was called by plaintiff and his testimony is spread over twenty pages of the record. Eleven pages or more than half consist of questions and answers on cross-examination. When this part of the record is taken as a whole, we do not believe there was prejudicial error and assignments of errors Nos. 10 and 11 must be overruled.

In the case of error No. 15, the objection goes to the overruling by the court or the failure by the court to rule upon questions and answers in the case of Dr. Willis T. Kubiac, a defense witness. We have examined these rulings over the record, pages 242 through 247 (page 243 excepted), and we are unable to say they are prejudicial, hence error No. 15 must be overruled.

In the case of error No. 20 (R. 383), in our judgment, it was not prejudicial and this error must be overruled.

Errors Nos. 18, 21, 25, 26 and 27 relate to statements made

by counsel, but after examining them we are unable to say that they constitute prejudicial error warranting reversal of the judgment and verdict, and these several errors assigning misconduct of counsel be and they are hereby overruled.

Errors Nos. 8, 12, 13, 14, 16 and 17 as well as 19 complain of alleged failures of the trial court to rule upon objections made by defense counsel. In some instances the alleged failure to rule took place during the consideration of a major question in which parts were under consideration. Taking the series as a whole we cannot say we feel that prejudicial error warranting a reversal of the judgment and verdict are set forth in the seven errors just above referred to and they must be overruled as well as error No. 22, which is a blanket objection to questions asked on pages 403, 404 and 405 of the record by which it was testified that the telegraph report of personal injury (Plaintiff's Exhibit A) at the time Conductor Wotisky signed it did not have any car number included.

Other errors have been assigned which, in our opinion, must be overruled. Among them are: No. 31, overruling defendant's motion for a new trial which was covered substantially by other assignments and the part, if any, not covered, must be overruled; No. 30, the overruling of defendant's motion for a directed verdict at the conclusion of all the evidence, and No. 32, overruling defendant's motion for judgment notwithstanding and contrary to the verdict for the reason that, in our opinion, they were properly overruled and No. 4 and No. 5, which allege in substance that the verdict and judgment upon the verdict are not sustained by sufficient evidence and are against the manifest weight of the evidence for the reason that the evidence offered by plaintiff, if believed, and the jury clearly must have believed it, was sufficient to support the verdict.

In our opinion, the petition was sufficient to set forth a cause of action and the testimony offered on behalf of the plaintiff was sufficient to sustain the judgment and verdict if it was believed by the jury as it apparently was. Questions of credibility are within the sole province of the jury and the proper instruction of a trial court to a jury that they may believe all that a witness says or believe a part of it or reject a part of it or they may disregard all the witness says.

For the reasons above set forth it becomes necessary to overrule each of the thirty-two assignments of errors and it is so ordered.

DUFFY, J., and McLAUGHLIN, J., concur.